Counsel have ten minutes aside and whenever you are ready take your time. Thank you, Your Honor. Good morning, Katie Hrolbrink on behalf of David Ho-Romero. For three reasons, the district court reversibly erred in interpreting the willfully element of the obstruction of justice guideline. First, the court conceitedly interpreted the term objectively even though this court interprets it subjectively. Second, the DC and Second Circuits inherently obstructive lines of case law do not help the government. Mr. Ho-Romero would prevail under either circuit's rules. And anyway, the inherently obstructive paradigm is both atextual and unconstitutional. Third, the remedy is remand because this court does not find facts on appeal. I'll start with the first point. Counsel, if you could speak a little bit closer to the microphone I would appreciate that. Of course, Your Honor. Why is it unconstitutional? I don't And I'll just apply a brief that to the extent the government is asking for an irrebutable presumption of willfulness anytime a defendant commits certain conduct that would violate the Due Process Clause. And that's because in United States v. Lucas Your Honor's said that a defendant's due process right includes a requirement that facts underlying sentencing factors be proved by a preponderance of the evidence. And in Footnote 5, Your Honor said that that requirement is not just sufficient for due process, it's necessary. So an irrebutable presumption of willfulness anytime a defendant commits certain conduct would not only relieve the government of that burden required by due process, but would even prevent defendants from contesting intent as Mr. Romero attempted to do here. On the subjective objective standard, I think there's really no dispute that there has to be a proof that the defendant subjectively intended willfully to engage in the violation. The question is on the standard that the district court applied. I think our case law would say that the district court could draw or the fact finder can draw a reasonable inferences from the evidence or from the facts. So it's not entirely clear to me that the district court was saying that the willfulness had to be objective or saying that they could draw a reasonable inference to find willfulness. I mean, is that a fair possible reading of the record? Well, I do not think so, Your Honor, for a couple of reasons. First of all, the government has conceded that the district court treated willfulness as an objective standard. So on Answering Brief, page 16, the government, referring to willfulness, said, quote, the court treated the question as an objective one. In any event, the government is arguing for an objective standard. That is exactly right, Your Honor. The government is asking for Your Honors to take on the Second Circuit's inherently obstructive test, under which it is sufficient that the defendant willfully engaged in the underlying conduct. So counsel, I'm having some difficulty seeing, let's assume for the purpose of my question that you're right about the subjective standard. I'm having difficulty seeing how any error here was not harmless. I mean, the facts before the district court and us was that your client continually, viciously, and over a long period of time, assaulted Paulina many times in many ways, that the other participant in the conversation, Brandon, according to the evidence, he went to Las Vegas to chase him down and beat him up. And then he basically says to them, the only information that the government could have gotten is from Paulina, and I'm coming over there. You're in trouble. I'm coming over there. How can that be anything but showing a subjective intent to obstruct? So Your Honor, I want to break down the various points. First of all, there is conflicting evidence about violence in the relationship. Brandon and Paulina both claimed that Mr. Romero was the abuser and Paulina was on the receiving end. But it is undisputed that Paulina herself had a domestic violence conviction against Mr. Romero, and Mr. Romero took out a restraining order against her. Brandon also acts somewhat strangely for someone who thinks that Mr. Romero truly was this violent person. As soon as Mr. Romero asks him to connect Mr. Romero with Paulina, Brandon agrees to do it. He maintains a friendly correspondence with Mr. Romero, both before and after. So that's an example of the kind of fact we would contest. We would also contest the notion... You already had a hearing on this, right? Correct. So it's not that you were deprived of the ability to introduce the facts. You did introduce all those facts. Exactly, Your Honor. It's simply that the district court did not make any finding about intent, even though defense counsel asked for an intent finding both in her papers and in the district, the colloquy, the sentencing colloquy. Is there a difference between intent to threaten and intent to obstruct justice? Absolutely, Your Honor. In cases like Hernandez and Archer, the Second Circuit makes clear the actual intent has to be an intent to stop the witness from continuing to cooperate with the government. That's the obstruction of justice. It cannot simply be anger, even fury, even feelings of understandable betrayal. I mean, these are all quotes from the cases about a witness's past testimony. So you can be angry, and as Mr. Romero did here, say, I want you to tell me about it, without actually having the intent to obstruct cooperation going forward. And that is exactly the finding the courts made in both Hernandez and Archer. And so that's all we're asking for. We're not suggesting that the evidence is conclusive either way. We are simply saying that the district court is the proper venue to find this fact. That's what Your Honors have done in previous cases. And if you succeed, you'll be going to the district court and saying, find that there was an obstruction and why don't you reduce the term of supervised release? Exactly, Your Honor. We'll be saying, we'll be able to make arguments both that because the custodial sentence was longer than it should have been, the court should compensate for that by reducing supervised release. That's one set of arguments we could make. And then we could also bring forward evidence under Pepper v. United States. So post-sentencing rehabilitation evidence based on the significant amount of time Mr. Romero has already spent in the community. Mr. Romero got a lengthy term of supervised release, the high end of the guidelines. And it's certainly not unreasonable to think that the district court would come down from that. And the guidelines would permit that? Yes, Your Honor. Because there was a safety valve or so on? Precisely. So the mandatory business analysis itself is going to be backward looking. It's going to ask whether this error did affect the sentence? Not necessarily. Whether you win or lose on this appeal, you could still ask the district court to adjust the term of supervised release based on changed circumstances, right? We could, Your Honor. But we are, if we can show, or if the government cannot show that this error was harmless, we are entitled to a resentencing where we get to make those arguments up front rather than seeking early termination on the back end. And unless Your Honors have any further questions, I'll reserve. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States. In this case, the government's position is twofold. One, that the court did not err in viewing this as an objective issue. And secondly, that even if it did, that the error was harmless. Now, when I first got this case, I remember I read Lofton from 1990, and it seems to indicate pretty clearly that there has to be a conscious intent to act with the purpose of obstructing justice. Right. So why isn't that just binding? Because that case didn't involve a threat, and it followed the Second Circuit. The Second Rule, where they say normally we require proof of a conscious purpose to obstruct justice. But isn't that what willfully means? I mean, just in English? I mean, it's not an objective standard? Well, willfully, I'm just saying these other three courts. Well, that's fine, but I'm asking you, we haven't decided that, and I'm asking you, what doesn't willfully mean on purpose, with an intent? It does. But as the Eighth Circuit says, there's some acts like threatening a prosecutor, threatening a witness. Well, as Judge Bennett says, I mean, that kind of information may allow a trier of fact to find the intent, but doesn't he still have to find the intent? Well, the D.C. Circuit say it served as a proxy for that. It says if something is so egregious, it serves as an implied finding. Well, I don't really want to know what the other circuits have said. I want you to address this from the point of view of a court which has said that yes, there has to be a conscious intent, and from the point of view of what the language says, and then tell me how we could find that there's no need for a finding of intent or purpose. Because in these circumstances, when you have an objective threat, you have a history of violence by the defendant against Paulina, a history of threat against Brandon. When somebody says, you know, if I get in trouble, there's going to be trouble for you, the court says that, you know, if that is objectively said, the way that the victims testified... Well, he could have meant, I suppose, that you're mixed up in this, and if I get in trouble, you're going to get in trouble, too, just as a prediction, not because I'm going to do anything. And again, this only needs to be found by a preponderance. I don't think that the district court can be said, you know... But he didn't find that. The district court could also find otherwise, but he didn't find anything. Well, the district court still addressed the issue. I think you're confusing how the district court can find intent and what intent is actually required, or what willfulness. And willfulness actually means subjective intent to obstruct justice. How someone can prove such intent can be through the objective facts, because we literally can't read someone's mind, right? So I think the cases, at least my understanding of them that you're discussing, talk about all the types of evidence that could show willfulness, right? But we have, it's law in our circuit that has still good law, that the actual intent that needs to be shown is a willful intent to obstruct justice. Now, the question of what kind of evidence is sufficient to do that, I think it's also a well-established rule that you can look at the facts and see whether a reasonable inference from the facts is that the defendant had that willful intent. The problem I see here is that there is, that was a disputed question of fact, and I don't see anything in the record where the district court resolved that disputed question of fact and specifically found that the defendant act with willful intent to obstruct justice. So if you, are you conceding there was no express finding to that effect? Yes. Oh yeah, I can't change this record. I'd lose credibility if I came up here and argued otherwise. So maybe I will pivot then to harmless error, because the important thing, I know that the defense, we're not asking this court to make a finding. We're asking the court to hold that the district court's failure to make the finding was harmless. Well, but then you have to predict that the district court would have found it, and why does it make more sense to just ask them? Well, because here, I mean, look, take guilt and innocence, Nieder v. United States. If a jury is not told about one element of an offense, this Court, the Supreme Court has said this Court But a jury is different. It's a lot harder to go back and ask the jury, right? You have to reverse the whole thing at that point. I would think that in the guilt and innocence context, there's harder standards. What the Supreme Court has said is even if a jury is not given an element, if there's overwhelming evidence, we can find harmless error. And counsel, we can look at what the district court said. And here, I agree with your concession, but the district court also said, and just looking at the words and the context in which you made them and the timing of what was going on, it clearly seems to me that the government has met its burden based on the objective evidence. So the district court uses the word objective in two different ways here, one for the standard, but also just looking at the evidence before it. And when the district court says clearly met your burden, I think that gives us some room to find harmless error. Agreed. And here you have, again, you know, the defense stipulated that the testimony from both of these witnesses was uncontroverted. And what, you know, you have from Paulina, she says, I've been beat. We had a horrible relationship. And, yes, she did have her own misdemeanor, domestic violence conviction, but she's not the person who's the defendant here. It's not her words that are at issue. It was this defendant that was under an indictment at the time. And not only did she say that she was hurt, Brandon, who had no beef in this entire thing, he corroborated that. He said, I saw bruises on her. They were fighting every time I was in their presence. I used to have to get in between them because he was best friends with her. So the problem I have here is that the way I read the transcript, the district court was finding that the words used were objectively threatening. But objective, making a threat is not the same thing as willfully intending to obstruct justice. And as you've conceded, the district court made no finding to that effect. And my understanding on our case law is that the district court needs to make explicit findings on every disputed issue of fact. And finding that the words used were objectively threatening under the circumstances is a separate finding of fact that the district court needed to make. And it does not necessarily mean that there was the required intent. So we have the act. We don't have the mens rea. So my understanding is that it's pretty straightforward under these circumstances, under our precedent, we should remand for the district court to make the explicit finding they needed to make. But that's why in the last set of comments I was making, I was already assuming error, Your Honor. This argument goes to harmless error. And I know that the usual... Isn't it true that in general if the district court misconstrues the guidelines, which is basically what we're saying, what the defendant is saying here. I mean, you're arguing otherwise, but assume we think that he misunderstood the guidelines by saying it could be objective rather than subjective, that willfully didn't have an intent requirement in some circumstances. Then our case law in the guidelines area in general says that unless we know from something the district court said that he would have found the same thing on the right standard, we remand because the district court has to apply the guidelines and the 3553A factors in tandem. So why isn't this a somewhat special circumstance with regard to harmless error? I can agree, Your Honor, that is the general rule. Because here the district court, and I pointed out in the government's brief, two separate places, volume three of the excerpt from record, pages 165 and 172, he said this is really a 3553 case. Well, but he also said, I mean, you tried to get him to say I would have done the same thing otherwise, and he didn't say it. Correct. Right? So how can we assume that he would have done the same thing otherwise when he said, well, the guidelines are really important and, you know, and they're basic and I don't really know what you're asking me. Yes, this is a 3553A factor case, but it's also a guidelines case. And he just would not agree with you that he would have done the same thing otherwise. Right. And it would have been nice if we had that. Right. That's okay, because he said that the 353 is the most important thing. We cite two cases at page 28. All right, but he didn't say it was the only thing. Yeah. No, he didn't say it was the only thing, but he said it was the most important thing. And even before argument, I've been ---- But you're not actually arguing the 3553A factors. You're arguing that subjectively he would have found the same thing as to this threat or this asserted threat, not that there were other things under 3553A that he would have ---- that would have made him come out the same way. So the 3553A is kind of a red herring here. The question is what would he have found as to this in particular. Well, I respectfully disagree, Your Honor, because the court not only says it twice, even when I reviewed the case again yesterday, Volume 3 of the Excerpt of Record 136, after giving his tentatives about the guidelines, the court says, and so I would like to, of course, hear any argument on the guideline calculations, but I principally invite argument under 3553. The low end of this defendant's guideline range ---- But that's a different point than the one that you came in here with on harmless error, as I understand it. Because the one you came in here with on harmless error is that on this issue, not on 3553A in particular, he would have found the same thing. Well, it's a second argument in favor of harmless. The harmlessness, evidence of subjective intent is overwhelming. But then Your Honor asked me a question, don't we have a rule that's normally a remand? And I'm saying, no, you don't have that. If you have, you know, we cited two cases at page 28 of our answering brief, Robledo and Solis, where this Court has found harmless error when a court says, the district judge says that 3553 was what mattered. So counsel, unless you have something further in response to Judge Mersen's question, can you conclude? What he actually said was, the guidelines, of course, are a benchmark. They are presumptively reasonable, but they are the benchmark. And the guidelines, of course, are important, but the most meaningful analysis to me was under 3553A. So he just refused to back out the guidelines when you asked him. And yet he gave the defendant a sentence almost 60 months lower than the low end of those guidelines that now the defense would have the court believe are the most important thing to him when all evidence was to the contrary. Unless there are further questions, the court, the government would submit. All right, thank you. You have some time left, counsel. Thank you, Your Honor. I don't have much else to add. I just want to emphasize a couple of things that Judge Sung and Judge Mersen stated. In that portion of the transcript where the district court said that the government had clearly met its burden based on the objective evidence, the court was evaluating the wrong burden. The court thought that the only burden was to show that, objectively, a witness would have understood his words to be threatening. And so that cannot be taken to mean that he would have found that, you know, the objective evidence clearly showed intent. And, in fact, it's notable that even though defense counsel asked the court for an intent finding multiple times, the court declined to give one. That's at least some suggestion that maybe this wasn't so straightforward. Otherwise, perhaps the district court would have just said, oh, well, in any case, he had the subjective intent to threaten. I also just want to reemphasize that we did object to intent in the PSR objections. Your Honor's case law requires strict compliance. And so, therefore, an implicit finding would not be sufficient. Your Honor's case law would require an explicit finding of intent. I just want to confirm if we were to agree that with you that there needed to be a showing, not just that the words used were objectively threatening, but also that the defendant needed to have the willful intent to obstruct justice, and that is a subjective requirement. Would, on remand, the district court be allowed to draw objectively reasonable inferences from the facts? Because I think the word reasonable is perhaps overused in this context. So that would not convert the finding into an objective standard. It would still have to be a subjective, willful intent. But the way that they could find it is by drawing reasonable inferences from the facts. Absolutely. I totally agree with Your Honor that you can't read a defendant's mind, and so you're going to have to do that kind of analysis. Thank you. One other question. Is it—I'm not so sure what the—there is a sentence in Everett, I guess it is, that—what is the name of the case that—the Second Circuit case that they're relying on? Oh, there's Hernandez, there's Archer. Not Hernandez. The one that they say— Oh, Reed. I'm sorry? Reed, the one where they adopt the inherently absurd— But is it really—would we be creating a circuit conflict if we said that willfully is a subjective standard always? I mean, when they said objective in those cases, did they mean that that was the end of the story, or did they mean that, as we've been saying, that you can infer from objective facts? Well, Your Honor, Reed does say that for objectively—or for inherently obstructive conduct, quote, it is sufficient that the defendant willfully engaged in the underlying conduct regardless of his specific purpose. So it does seem to be adopting this objective standard. But importantly, in the Second Circuit, threats to witnesses are not inherently obstructive. Both in Hernandez and in Archer, the Second Circuit held that intent is required. So to side with the government would, in fact, create a circuit slip. All right. Thank you, counsel. Thank you. We thank both counsel for their arguments. The case argued—just argued is submitted. And with that, we'll move to the next case on the argument calendar.
judges: BERZON, BENNETT, SUNG